UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAWMUT WOODWORKING & SUPPLY, INC. d/b/a SHAWMUT DESIGN AND CONSTRUCTION<br><br>          Plaintiff,<br><br>v.<br><br>STARBUCKS CORPORATION d/b/a STARBUCKS COFFEE COMPANY<br><br>          Defendant. | Case No.: 20-cv-2289 (DLC)<br><br>**FIRST AMENDED COMPLAINT** |

Shawmut Woodworking & Supply, Inc. d/b/a Shawmut Design and Construction ("Shawmut"), by and through its undersigned counsel, in accordance with this Court's Order dated April 8, 2020, for its Amended Complaint against defendant Starbucks Corporation d/b/a Starbucks Coffee Company ("Starbucks"), alleges as follows:

## PARTIES

1. Shawmut is a Massachusetts corporation whose principal place of business is located at 560 Harrison Avenue, Boston, Massachusetts 02118.  At all relevant times, Shawmut was duly authorized and licensed to perform general contracting services in the State of New York.

2. Upon information and belief, Starbucks is a Washington corporation with a principal place of business located at 2401 Utah Avenue South, Suite 800, Seattle, Washington 98134, whose agent for service of process in New York is The Prentice-Hall Corporation System, Inc., 80 State Street, Albany, New York 12207.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship between Shawmut and Starbucks, and the amount in controversy exceeds $75,000 (not including interest and costs).

4. Venue is proper in this District under 28 U.S.C. § 1391(a) because Starbucks has a place of business located in this District, all of the events giving rise to Shawmut's claims occurred in this District, and the contract at issue provides, in relevant part, that

> any legal action brought under or in connection with the subject matter of this Contract *shall be brought only in the United States District Court for the Southern District of New York* or, if such court would not have jurisdiction over the matter, then only in a New York State court sitting in the Borough of Manhattan, City of New York.  Each party submits to the exclusive jurisdiction of these courts and agrees not to commence any legal action under or in connection with the subject matter of this Contract in any other court or forum.

(Emphasis added.)

## FACTUAL ALLEGATIONS

5. Shawmut is a general contractor and provided construction services, labor, and materials to Starbucks for the construction of the Starbucks Reserve ™ New York Roastery and Tasting Room located at 61 9th Avenue, New York, New York (the "project" or the "Roastery") pursuant to a written agreement dated April 3, 2017 (the "Contract").

6. The Roastery is a 3-story, 23,000 square foot space containing five bars – two for coffee and one each for cocktails, takeaway beans, and pastries – as well as, according to Starbucks, the largest fully-operational coffee roasting plant in Manhattan.

7. On its website, Starbucks touts the Roastery as being a "one-of-a-kind space [which] features an impressive mix of bars and custom details," a "spectacular destination," and a "space to bring your event to life in a uniquely memorable way."

8. Starbucks drafted the Contract.

2

9. The Contract had an original Contract Sum of $27,650,182.

10. During the course of the project, Shawmut was confronted with countless design changes implemented by Starbucks that resulted in numerous changes to Shawmut's contractual scope of work, significantly delayed the project schedule, and impacted Shawmut's costs to complete the project.

11. During the course of the project, Starbucks had a team onsite at the Roastery all day, every day.

12. From the project's commencement and throughout its duration, Starbucks never stopped designing and redesigning the Roastery and requiring Shawmut to make changes to its work to accommodate same.

13. During the course of the project, Starbucks directed and required Shawmut to immediately perform the work required by the changes Starbucks implemented to the design and redesign of the project.

14. Shawmut performed all changes to its work directed by Starbucks with Starbucks' knowledge and consent.

15. Pursuant to the Contract, in the event any design-related directives include changes to Shawmut's scope of work, the change is to be incorporated by Change Order.

16. During the course of the project, Starbucks paid Shawmut for many (but not all) of the changes to its scope of work without the need for a Change Order as a result of the design changes implemented by Starbucks.

17. The numerous changes to the project implemented by Starbucks impacted Shawmut's ability to efficiently sequence and timely perform its work, resulted in project delays, and significantly increased Shawmut's subcontract costs and increased the amount of materials and equipment incorporated into the project.

18.     In or about the summer of 2018, Liz Muller, Starbucks' Chief Design Officer, took charge of the project on behalf of Starbucks.

19.     Upon her involvement in the project, Ms. Muller issued two main directives: (1) she instructed Starbucks and Shawmut to cooperatively work together to do "whatever it takes" to complete the project with all deliberate speed whereby Shawmut would institute overtime/ double shifts and Starbucks agreed to pay for same; and (2) Starbucks and Shawmut would refrain from asserting and submitting any written claims against each other.

20.     As its Chief Design Officer, Ms. Muller, at all times, had actual, apparent, and/or implied authority to enter into transactions with Shawmut on behalf of Starbucks and to oversee and direct the project.

21.     Due to the project delays caused by Starbucks, the parties agreed to adjust the Contract Time.

22.     Per the express terms of the Contract, the Contract Time can only be adjusted by Change Order.

23.     Due to the project delays caused by Starbucks, the parties agreed to extend the Contract Time three (3) times during the course of the project, twice by written Change Order and once without a written Change Order.

24.     Accordingly, although the Contract required any extension of the Contract Time to be by written Change Order, the parties agreed to extend the Contract Time – to achieve Substantial Completion of the project – without the need for a written Change Order.

25.     Due to the project delays caused by Starbucks, the parties also agreed that Starbucks would pay for Shawmut and its subcontractors to accelerate their work (premium time/overtime) ("Acceleration Costs") to complete the project.

26.     Starbucks memorialized its agreement to pay Acceleration Costs in writing.

4

27. Pursuant to the Contract, in the event overtime, double shift work, and/or additional subcontractors is necessary to achieve Substantial Completion due to no fault of Shawmut, Shawmut is required to perform its work while a Change Order for those additional costs is prepared and approved.

28. Instead of agreeing to a lump sum Change Order to the Contract for the Acceleration Costs, Starbucks requested that Shawmut submit a monthly accounting of the actual Acceleration Costs Shawmut and its subcontractors incurred for Starbucks' approval and payment.

29. Starbucks memorialized in writing its agreement to pay the actual Acceleration Costs Shawmut and its subcontractors incurred via the monthly accounting.

30. In reliance on Starbucks' agreement to pay Acceleration Costs, Shawmut and its subcontractors accelerated their work and provided Starbucks an accounting of the actual Acceleration Costs they incurred thereafter.

31. Starbucks paid Shawmut in full for the Acceleration Costs Shawmut and its subcontractors incurred in June through September 2018.

32. Starbucks paid Shawmut in full for the June through September 2018 Acceleration Costs Shawmut and its subcontractors incurred without requiring execution of a written Change Order prior to performing the work and incurring the Acceleration Costs.

33. On or about September 25, 2018, the parties agreed by Change Order to adjust the Contract Time, extending the date for Shawmut to achieve Substantial Completion of the project to October 29, 2018 and Final Completion of the project to November 20, 2018.

34. The September 25, 2018 Change Order adjusting the Contract Time included Shawmut's costs for the seventeen (17) working days between Substantial Completion and Final Completion.

35. Even after execution of the Change Order adjusting the Substantial Completion date to October 29, 2019, Starbucks continued to implement design and redesign changes to the project.

36. On or about September 25, 2018, Starbucks executed a Change Order agreeing to pay the actual Acceleration Costs Shawmut incurred in October 2018.

37. The Change Order projecting Shawmut's Acceleration Costs for October 2018 expressly noted that Shawmut's actual costs would be reconciled upon completion of the project.

38. In further reliance on Starbucks' instructions/directions to Shawmut to accelerate its work and its agreement to pay for same, Shawmut and its subcontractors continued to accelerate their work in October through December 2018 in order for Starbucks to be able to open the Roastery to the public as it had planned. Starbucks in fact opened the Roastery on December 14, 2018.

39. Like it did in June through September 2018, Shawmut provided Starbucks an accounting of the actual Acceleration Costs it and its subcontractors incurred for October through December 2018 after performing same.

40. Notwithstanding Starbucks' promise, agreement, and prior course of dealing with Shawmut concerning payment for the Acceleration Costs, Starbucks failed and refused to pay Shawmut and its subcontractors for the actual Acceleration Costs they incurred for October through December 2018.

41. Upon completion of the project, Starbucks failed and refused to pay any of the Acceleration Costs Shawmut incurred in October 2018.

42. Starbucks induced Shawmut and its subcontractors to reasonably rely on Starbucks' representations that it would pay Shawmut and its subcontractors the actual Acceleration Costs incurred to entice them into accelerating their work. Only after Shawmut

6

achieved Substantial Completion of the project and Starbucks had beneficial use of the Roastery space, did Starbucks fail to pay Shawmut and its subcontractors for their actual acceleration costs.

43. Shawmut substantially completed the project on October 29, 2018.

44. Starbucks took full possession of the Roastery on October 29, 2018.

45. Thereafter, per Starbucks' instruction and direction, Shawmut performed punch list work and additional/extra work at the request and direction of Starbucks during abbreviated shifts at night in order to prevent any disruption to or interference with Starbucks' use and possession of the Roastery space.

46. Following Substantial Completion, Starbucks continued to implement design and redesign changes to the project, which Shawmut implemented at the request and direction of Starbucks at night.  For example, among other things, Starbucks requested Shawmut to reroute and adjust the completed intricate tubular conveyor system installed throughout the ceiling of the Roastery, to add to and modify piping work previously installed and completed, to modify baking and roasting equipment previously installed and completed, and to perform additional labor intensive and specialized carpentry/millwork.

47. By taking full possession of the Roastery on October 29, 2018 and limiting Shawmut's access to the Roastery to night shift hours, Starbucks prevented Shawmut from performing the punch list work and the additional work performed at the request and direction of Starbucks during normal working hours.

48. Starbucks agreed to pay Shawmut for the overtime/premium costs Shawmut would incur in connection with its work outside of normal working hours.

49. Starbucks failed and refused to pay any of the overtime/premium costs Shawmut incurred in November 2018 as a result of Starbucks' refusal to allow Shawmut perform its work during normal working hours.

50. Starbucks failed and refused to pay Shawmut in full for the additional/extra work Starbucks required Shawmut to perform during the course of the project.

51. Starbucks failed and refused to pay Shawmut in full for the Acceleration Costs Starbucks caused Shawmut to incur during the course of the project.

52. Starbucks wrongfully and erroneously and/or fraudulently held Shawmut responsible for certain mechanical failures at the project, which were later determined to be the sole responsibility of Starbucks.

53. Shawmut incurred nearly $250,000 in time and materials addressing the mechanical failures which were ultimately determined to be attributable to and the responsibility of Starbucks.

54. Starbucks is obligated to pay Shawmut for the costs it incurred addressing the mechanical failures that were later determined to be the sole responsibility of Starbucks.

55. After Shawmut completed the project, Starbucks failed to timely pay Shawmut for its work on the project pursuant to the provisions of the Contract.

56. Pursuant to the Contract, within seven (7) days after receipt of Shawmut's Application for Payment, Starbucks shall either issue a Certificate of Payment for such amounts it determines to be properly due, notify Shawmut in writing of the reasons for withholding certification in whole or in part, or state that additional time is needed to evaluate Shawmut's work and the Application for Payment.

57. On or about December 12, 2018, Shawmut submitted to Starbucks Payment Application No. 17, which pertained to amounts due and owing to Shawmut for November 2018.

58. Starbucks did not address nor acknowledge Shawmut's Payment Application No. 17 until February 19, 2019.

59. On or about January 3, 2019, Shawmut submitted to Starbucks Payment Application No. 18, which pertained to amounts due and owing to Shawmut for December 2018.

60. Starbucks did not address nor acknowledge Shawmut's Payment Application No. 18 until March 15, 2019.

61. On or about January 23, 2019, Shawmut submitted to Starbucks Payment Application No. 19, which pertained to amounts due and owing to Shawmut for January 2019.

62. Starbucks did not address nor acknowledge Shawmut's Payment Application No. 19 until March 15, 2019.

63. Pursuant to the Contract, Starbucks was obligated to make payment of any certified amount to Shawmut not later than forty-five (45) days following approval of an Application for Payment.

64. After achieving Substantial Completion of the project, Starbucks failed to comply with its payment obligations of the Contract, rendering payment to Shawmut nearly six (6) months after Applications for Payment had been approved.

65. During the course of the project, Shawmut apprised Starbucks of all claims it and its subcontractors possessed against Starbucks as a result of the numerous changes and delays attributable to Starbucks.

66. Upon Shawmut's completion of the project, Starbucks and Shawmut held weekly meetings for purposes of addressing and resolving all outstanding Change Orders and/or claims.

67. During these weekly meetings, Starbucks and Shawmut were able to resolve many (but not all) outstanding Change Orders and/or claims.

9

68. In or about March 2019, Starbucks refused to further communicate with Shawmut, refusing to address and resolve the remaining outstanding Change Orders and/or claims.

69. Starbucks thereafter reneged on agreements it had previously reached with Shawmut at the completion of the project in connection with certain outstanding Change Orders and/or claims Shawmut and/or its subcontractors possessed against Starbucks.

70. Starbucks waived provisions of the Contract requiring written authorization or notice of claims.

71. Starbucks failed to execute Change Orders for extra and changed work performed by Shawmut's subcontractors, and for additional costs incurred by Shawmut in connection therewith. Shawmut nevertheless performed the Starbucks-directed changed work in good faith to complete the project, notwithstanding Starbuck's contractual failure and refusal to execute the valid change-related documents.

72. Shawmut completed in full all extra and changed work Starbucks directed it to perform during the course of the project in reliance on Starbucks' promise and agreement to render payment for same.

73. Starbucks induced Shawmut to rely on Starbucks' agreement to pay Shawmut for the costs it incurred in connection with the changes to Shawmut's scope of work Starbucks directed and caused to the project.

74. Shawmut performed $9,533,022 in change order/extra work during the course of the project.

75. Pursuant to the Contract, Shawmut is also entitled to a 6% adjustment of the total amount of all Change Orders as a fee and general conditions, which Starbucks has failed and refused to pay to Shawmut.

76. The adjusted Contract Sum for the project is $37,183,204.

77. To date, Shawmut has been paid $30,628,163.35, leaving a balance due and owing from Starbucks – after crediting $80,596.09 due to Starbucks – the amount of $6,474,444.56.

78. Despite demand, Starbucks has failed and refused without justification to render payment to Shawmut of all amounts due and owing on the project.

79. As Shawmut achieved Substantial Completion of the project on October 29, 2018, Starbucks is not entitled to liquidated damages under the Contract.  This is evidenced by the fact that by October 29, 2018 Starbucks had, among other things: (1) taken full possession and control of the Roastery; (2) applied for and met all conditions required for a temporary Certificate of Occupancy; and (3) had ample opportunity to inspect Shawmut's completed work.

80. Starbucks opened the Roastery to the public on or about December 14, 2018.

81. After Shawmut achieved Substantial Completion of the project, Starbucks failed to render timely payment to Shawmut in accordance with the terms of the Contract.

82. After achieving Substantial Completion, Shawmut completed all punch list work or was prevented by Starbucks from completing same, and provided all available construction and payment documents in order to achieve Final Completion.

83. Shawmut met and/or Starbucks waived all conditions precedent to Final Completion of the project, entitling Shawmut to Final Payment under the Contract.

84. Starbucks has failed and refused to render Final Payment to Shawmut.

85. Starbucks has without basis, wrongfully claimed that Shawmut failed to properly perform nearly two million dollars of work and that Shawmut owes it millions of dollars in liquidated damages for failing to achieve Substantial Completion and "Final Completion" of the project.

11

86. Notwithstanding Starbucks' allegations set forth in paragraph 85 above, Starbucks has never identified any work Shawmut failed to perform or defectively performed and has wrongfully withheld payment from Shawmut of monies which are undisputedly due and owing to Shawmut.

87. The Contract does not entitle Starbucks to liquidated damages for any failure to achieve Final Completion.

88. To the extent there is any ambiguity in the Contract concerning the imposition of liquidated damages for failing to timely achieve Final Completion of the project (which there is none) the ambiguity is to be interpreted and construed against Starbucks.

89. Starbucks wrongfully deprived Shawmut from receiving all of the benefits of the Contract.

90. Despite the fact that Shawmut constructed and delivered to Starbucks a magnificent one-of-a-kind space that (prior to the COVID-19 crisis), has been open for business seven (7) days a week over 12 (12) hours a day for over a year, Starbucks has failed and refused to render payment to Shawmut for all amounts due and owing under the Contract.

91. Starbucks' wrongful failure to render payment of amounts due and owing to Shawmut has and will continue to cause Shawmut loss and damage.

## COUNT I
### (Breach of Contract)

92. Shawmut incorporates each of the above allegations as if fully set forth here.

93. Shawmut entered into a written Contract with Starbucks to provide services, labor, and materials in the construction of the project.

94. Shawmut substantially completed the project, building a spectacular commercial space in a good and workmanlike manner and in accordance with the terms of the Contract.

95. Shawmut's labor and materials were incorporated into the project and improved the Roastery.

96. Starbucks does not possess any valid backcharges against Shawmut in connection with the labor and materials Shawmut supplied and incorporated into the project.

97. Shawmut fully performed its obligations under the Contract, excepting only those items for which Shawmut was hindered, prevented, and/or excused from performing by Starbucks' actions/inaction.

98. Shawmut either satisfied all contractual conditions precedent to Starbucks' obligation to render payment to Shawmut of all amounts due and owing on the project or Starbucks waived same by its actions/inaction and/or conduct.

99. Starbucks materially breached the Contract in multiple instances which include, but are not limited to, the following:

    a. by failing and refusing to execute change orders for the additional work it directed and authorized Shawmut to perform on the project and for failing to pay Shawmut for same;

    b. by failing and refusing to pay Shawmut and its subcontractors for the actual Acceleration Costs they incurred and that Starbucks ordered and agreed to pay;

    c. by failing and refusing to timely process applications for payment;

    d. by failing and refusing to timely render payment;

    e. by wrongfully withholding contractual retainage and other monies owed to Shawmut under the false premise/pretense that it is entitled to recover liquidated damages from Shawmut; and

    f. by wrongfully withholding contractual retainage and other monies owed to Shawmut under the false premise/pretense of inflated backcharges for items which it never gave proper notice to Shawmut and/or prevented Shawmut from performing and by asserting

backcharges for the mechanical system which Starbucks knew was not Shawmut's responsibility.

100. To date, an unpaid Contract balance of $6,474,444.56 is due and owing to Shawmut from Starbucks.

101. As a result of Starbucks' actions and inactions described herein, Shawmut has been and will continue to be damaged in an amount no less than $6,474,444.56, plus interest, for which Starbucks is liable to Shawmut.

## COUNT II
### (Breach of the Covenant of Good Faith and Fair Dealing)

102. Shawmut incorporates each of the above allegations as if fully set forth here.

103. Implied in the Contract is a covenant of good faith and fair dealing in the course of performance.

104. At all times relevant to this matter, Starbucks had a duty to act in good faith and to diligently honor and perform its obligations under the Contract and deal with Shawmut fairly.

105. In bad faith, Starbucks conducted a "bait and switch" with Shawmut by inducing Shawmut and its subcontractors to accelerate their work with the promise of payment only to refuse to pay Shawmut and its subcontractors for the work and acceleration costs they incurred after Shawmut completed the project and turned it over to Starbucks.

106. By wrongfully claiming that it is entitled to recover liquidated damages, Starbucks has engaged in bad faith, failed to honor and perform its obligations under the Contract, and deal with Shawmut fairly.

107. By wrongfully blaming Shawmut for mechanical issues determined to be the sole responsibility of Starbucks, Starbucks has engaged in bad faith, failed to honor and perform its obligations under the Contract, and deal with Shawmut fairly.

108. By wrongfully inflating and asserting amorphous backcharges, failing to provide Shawmut with prior notice of same, and withholding undisputed Contract monies and retainage owed, Starbucks has engaged in bad faith, failed to honor and perform its obligations under the Contract, and deal with Shawmut fairly.

109. As a result of Starbucks' breach of the covenant of good faith and fair dealing, Shawmut has been and will continue to be damaged.

## COUNT III
### (Quantum Meruit)

110. Shawmut incorporates each of the above allegations as if fully set forth here.

111. Shawmut substantially performed its extra work in good faith with the reasonable expectation that Starbucks would render payment to it for the fair value of same.

112. Shawmut and its subcontractors accelerated their work in good faith at Starbucks' direction and with the reasonable expectation that Starbucks would render payment to it for the fair value of same.

113. Starbucks received the benefit of Shawmut's work, opened the Roastery to its customers, and has not paid Shawmut for the benefit Shawmut conferred.

114. In the event Shawmut is precluded from recovering under the Contract, Shawmut is entitled to recover the fair value of the labor, material, equipment, and services it furnished to Starbucks to construct the project.

115. Starbucks is liable to Shawmut under a theory of quantum meruit for the fair value of the labor, material, equipment, and services Shawmut furnished to it on the project.

**PRAYER(S) FOR RELIEF**

WHEREFORE, Shawmut prays for judgment as follows:

(a) That Starbucks by adjudged and decreed to have breached the Contract;

(b) That Starbucks by adjudged and decreed to have breached the covenant of good faith and fair dealing implied in the Contract;

(c) That Shawmut recover damages from Starbucks for all losses recoverable under the Contract stemming from Starbucks' breach of the Contract and the implied covenant of good faith and fair dealing;

(d) Alternatively, that Starbucks be ordered to pay Shawmut the fair value of the labor, material, equipment and services that Shawmut provided and conferred upon Starbucks in the construction of the Project;

(e) That Shawmut be awarded pre- and post-judgment interest;

(f) That Shawmut recover its costs and reasonable attorneys' fees;

(g) That Shawmut be awarded such other, further relief as justice may require and the Court may deem just and proper.

iManageDB1\105737\000018\3460428.v1-4/30/20

Respectfully submitted,

PRINCE LOBEL TYE, LLP


By: */s/ Hugh J. Gorman, III*

Hugh J. Gorman, III, Esq.
Christopher C. Miller, Esq. (*pro hac vice* admission to be filed)
One International Place, Suite 3700
Boston, MA 02110
(617) 456-8000 (phone)
(617) 456-8100 (facsimile)
hgorman@princelobel.com
cmiller@princelobel.com

Seth Natter, Esq.
Natter & Natter
501 Fifth Avenue
New York, NY 10017
(212) 840-8300 (phone)
(212) 302-0295 (facsimile)
snatter@natterrip.com

*Counsel for Plaintiff Shawmut Woodworking & Supply, Inc. d/b/a Shawmut Design and Construction*

Dated: April 30, 2020

17